UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JULIA DIANE PEWO and COYE WAYNE NOHAVA,<br><br>Defendants. | 4:25-CR-40101-KES<br><br>ORDER DENYING DEFENDANTS' MOTIONS FOR MISTRIAL |

Defendants, Julia Diane Pewo and Coye Wayne Nohava, were both found guilty by a jury on August 13, 2026, of one count of Conspiracy to Distribute a Controlled Substance. Docket 151. Pewo made an oral motion for a mistrial claiming improper vouching by a government witness and improper expert testimony opining on the ultimate issue. Docket 170; Docket 171 at 5–6. Nohava later joined in the motion regarding only the improper vouching claim. Docket 172. The court reserved ruling on the motions pending the jury's verdict and requested briefing from all parties. Docket 150 at 4; Docket 159. For the following reasons, the court denies both defendants' motions for mistrial.

**BACKGROUND**

Pewo and Nohava were charged in a superseding indictment with conspiracy to distribute 500 grams or more of a mixture and substance containing methamphetamine. Docket 36; Docket 184 at 1. At the jury trial,

the government called Daniel Christiansen, Minnehaha County Sheriff's Detective, as both a fact witness and an expert witness. Docket 171 at 2, 6; Docket 184 at 1. Detective Christiansen's testimony was bifurcated into a fact portion and an expert portion under a motion in limine that was made by Pewo. Docket 130 at 3–4; Docket 144; Docket 184 at 1.

Detective Christiansen first testified as a fact witness about his involvement in the investigation and his role in conducting proffer interviews. Docket 184 at 2–3; *see* Docket 190 at 14:3–16:5. At the close of Detective Christiansen's fact testimony, Pewo asked for a hearing outside the presence of the jury and moved for a mistrial on the basis that Detective Christiansen "testif[ied] to [other witnesses'] state[s] of mind, and [was] invading the province of the jury and their ability to determine truthfulness." Docket 190 at 29:16, 20–22. Neither Pewo nor Nohava contemporaneously objected to this testimony or addressed it during cross-examination. *See id.* at 22:21–27:16 (transcript of cross-examination). During the sidebar, Novaha "didn't object" to the testimony and did not join in the motion for mistrial. *Id.* at 30:5. The court reserved ruling on Pewo's motion until a transcript could be prepared. *Id.* at 31:1–2.

After Detective Christiansen's fact testimony, a different witness testified. Docket 184 at 5; Docket 190 at 31:7–8. The government then recalled Detective Christiansen to testify as an expert witness in his role as a narcotics detective. Docket 184 at 5; Docket 190 at 31:13–22. After a series of questions about whether the communications recovered from witnesses' cell phones were "consistent with drug activities, specifically distribution activity[,]" Docket 190

at 42:6–7, Novaha objected to the testimony as “beyond the scope of expert testimony under *Daubert*, calls for speculation, and invades the province of the jury[,]” *id.* at 44:12–14. The objection was overruled. *Id.* at 44:15. Pewo did not object at any time to this testimony, although her counsel later stated “I was going to object[.]” *See id.* at 43–44, 49:9. Instead, Pewo later renewed her motion for mistrial during an unrelated objection made by Nohava. *Id.* at 49:12–15; Docket 171 at 8, 10. Beyond Nohava’s objection, neither Pewo nor Nohava otherwise addressed the allegedly improper testimony during their recross examination of Detective Christiansen. Docket 190 at 55:2–59:15 (Pewo recross); Docket 190 at 59:17–66:16 (Nohava recross).

The jury found Pewo guilty of conspiring to distribute 500 grams or more of a mixture containing methamphetamine and Nohava guilty of conspiring to distribute 50 grams or more of a mixture containing methamphetamine. Docket 152; Docket 171 at 1; Docket 184 at 2. Beyond the jury instructions that were agreed upon by all parties, no limiting or curative instruction was requested. Docket 173 at 1.

**DISCUSSION**

“Before ordering a mistrial, the court must give each defendant and the government an opportunity to comment on the propriety of the order, to state whether that party consents or objects, and to suggest alternatives.” Fed. R. Crim. P. 26.3. “The district court has broad discretion to grant or deny a motion for mistrial because it is in a far better position to weigh the effect of improper testimony, and because less drastic measures such as a cautionary

instruction are generally sufficient to alleviate prejudice flowing from improper testimony." *United States v. Oldrock*, 867 F.3d 934, 941 (8th Cir. 2017) (citation omitted); *see United States v. Encee*, 256 F.3d 852, 854 (8th Cir. 2001) ("It is within the discretion of the district judge to grant or deny a motion for mistrial[.]").

## I. Defendants did not timely object to the challenged testimony and thus waived their objections[1]

Pewo argues for a mistrial alleging the government's witness, Detective Daniel Christiansen, engaged in two instances of improper conduct during his testimony, vouching and opining on the ultimate issue. Docket 171 at 7–8, 10. Nohava raises only the improper vouching claim as grounds for a mistrial. Docket 173 at 4. The court finds that because neither Pewo nor Nohava timely objected to these challenged portions of Detective Christiansen's testimony, their objections are waived and do not support their motions for mistrial.

"An objection is timely only if it is made 'at the earliest possible opportunity after the ground of objection be[comes] apparent.' " *United States v. Evans*, 908 F.3d 346, 352 (8th Cir. 2018) (alteration in original) (quoting *United States v. Shores*, 700 F.3d 366, 370 (8th Cir. 2012)). The Eighth Circuit has held that the timeliness requirement under Federal Rule of Evidence 103(a)(1)

[1] Technically, Pewo *forfeited* her objection to both Christiansen's fact and expert testimony because she raised no objection to either. Docket 190 at 29:16, 49:9. In contrast, Nohava *waived* his objection to the fact testimony because he knowingly and strategically "didn't object[,]" *id.* at 30:4–5, and he *preserved* his objection to portions of the expert testimony, *id.* at 44:11. For simplicity, the court uses "waiver" throughout.

means that if a party does not object "at the earliest possible opportunity after the ground of objection becomes apparent," then the objection "will be considered waived." *McKnight v. Johnson Controls, Inc.*, 36 F.3d 1396, 1408 (8th Cir. 1994) (quoting *Terrell v. Poland*, 744 F.2d 637, 639 (8th Cir. 1984)).

Waiting until after the close of the witness's testimony is not timely. "If the ground for the objection becomes apparent while the witness is testifying, a subsequent motion to strike the testimony after the witness finishes does not preserve the issue for appeal." *Id.* at 1408; *see Shores*, 700 F.3d at 370 (holding the defendant "did not make a timely objection" because he waited to raise the issue "until just prior to closing arguments"); *Evans*, 908 F.3d at 352 ("[D]efense counsel's objection the next day came too late, long after the 'earliest possible opportunity' had passed."); *United States v. Adejumo*, 772 F.3d 513, 537 (8th Cir. 2014) ("The district court gave [defendant] an opportunity to object, but [he] acquiesced. [Thus, he] has waived any objection he had[.]").

**A. Vouching**

The claim of improper vouching arises from Detective Christiansen's testimony as a fact witness in which he testified about his involvement in the investigation and his role in conducting proffer interviews. Docket 184 at 2–3; *see* Docket 190 at 14:3–16:5. Detective Christiansen was asked on direct examination about the guardrails built into proffers, and he commented that "[a]s part of that proffer agreement, [cooperating witnesses] [are] to tell us the truth about crimes, both stuff they were involved in and others." Docket 190 at 14:17–19. He stated that "our job as investigators is . . . to kind of figure out if

they're telling us the truth or not, which we definitely have had mixed results at certain times, but it's usually pretty easy to wade through that." *Id.* at 15:4–8. Detective Christiansen testified that once a proffer is eventually made "by this time you're going to have a very good grasp of the people involved, the amounts, kind of the time frame. So you're going to know right out of the gate, I guess, if some of that is not truthful." *Id.* at 15:12–15. A short time later, when discussing cell phone text messages, Detective Christiansen testified that when he interviews a cooperating witness, he "ask[s] them if we can look through [their] phone together" because it "is a snapshot of the truth from the past." *Id.* at 17:7, 17:9. He commented that the "cell phone will likely verify if those stories are true." *Id.* at 17:10–11.

In her brief supporting her motion for mistrial, Pewo claims that Detective Christiansen "improperly vouched for the credibility of the co-conspirator witnesses" through this line of questioning. Docket 171 at 5. In his brief supporting his motion for mistrial, Nohava also argues that there was improper vouching "for the truthfulness of the testimony of the Government's four cooperating alleged co-conspirators[.]" Docket 173 at 1. But neither Pewo nor Nohava objected to this testimony or addressed it during cross-examination. *See* Docket 190 at 22:21–27:16 (transcript of cross-examination). Instead, at the close of Detective Christiansen's fact testimony, Pewo asked for a hearing outside of the presence of the jury and moved for a mistrial on the basis that Detective Christiansen "testif[ied] to [other witnesses'] state[s] of mind, and [was] invading the province of the jury and their ability to determine

truthfulness." *Id.* at 29:16, 29:20–22. During this sidebar, Novaha's counsel was directly asked by the court whether he "want[ed] to add anything" to Pewo's motion. *Id.* at 29:25–30:1. Counsel stated, "I was thinking . . . there's a little bit of improper vouching going on there," but he chose not to object. *Id.* at 30:3–5. Nohava did not join in the motion for mistrial at this point because he "like[d] the way the trial has been going." *Id.* at 30:6.

The government resists the motions because neither defendant made a timely objection at trial and the evidentiary issues were not preserved. Docket 184 at 7. The government correctly notes that "Pewo first raised the issue [of vouching] in her motion for mistrial at the close of Detective Christiansen's testimony after he had finished his direct testimony, been subject to cross examination, and then gone through re-direct testimony." *Id.* at 7–8. Likewise, "Nohava initially did not object at all and only joined in the motion later in the trial." *Id.* at 8.

The court finds that both defendants waived their objection to the allegedly improper vouching testimony because neither timely objected. Waiting until the close of a witness's testimony to raise concerns does not meet the Eighth Circuit's "earliest possible opportunity" requirement. The Eighth Circuit requires a contemporaneous objection when "the ground for the objection becomes apparent while the witness is testifying[.]" *Johnson Controls*, 36 F.3d at 1408. Either defendant could have contemporaneously objected to Detective Christiansen's testimony, but they did not. Nohava, in particular, was even given an opportunity to object during the sidebar conference and chose to

waive his objection. Defendants should not be rewarded for remaining silent during what they believe to be improper testimony and then later use that testimony as a basis for mistrial. To do so "create[s] severe perverse incentives for criminal defendants[.]" *United States v. Delgado-Nunez*, 295 F.3d 494, 497 (5th Cir. 2002). "A defendant would be able to game the system and obtain a free second shot at an acquittal by waiting for his trial to conclude and then [raising his challenge] in the event of a conviction." *Id.* Thus, Pewo and Nohava have waived any claim to improper vouching during Detective Christiansen's fact witness testimony.

**B. Opining on the Ultimate Issue**

The second challenge arises from when the government later recalled Detective Christiansen to testify as an expert witness. Docket 171 at 6. Detective Christiansen has been a narcotics detective for 13 years with experience and knowledge of the use and distribution of methamphetamine. Docket 184 at 5; Docket 190 at 31:23–31:25. During the government's redirect examination, Detective Christiansen was asked "[w]hat can you tell, from your experience talking with users, dealers, about those [drug] quantities that are involved" in the text messages recovered from the defendants. Docket 190 at 43:17–43:18. Detective Christiansen testified "that's, you know, without a doubt, distributable amounts of methamphetamine there." *Id.* at 43:24–43:25. The government asked if those amounts were "consistent with distribution[,]" to which Detective Christiansen responded "Yes. Very." *Id.* at 44:1–44:2.

Nohava did not object contemporaneously, but after the government had begun a new line of questioning and asked Detective Christiansen three more questions, Novaha objected to the testimony as "beyond the scope of expert testimony under *Daubert*, calls for speculation, and invades the province of the jury." *Id.* at 44:12–44:14. The objection was overruled, *id.* at 44:15, and Nohava does not raise this testimony in his motion for mistrial, *see* Docket 172; Docket 173.

Pewo did not object to this testimony, but her counsel later stated "I was going to object[.]" *See* Docket 190 at 43–44, 49:9. Rather, during a subsequent objection by Nohava's counsel not related to the challenged testimony at issue, Pewo simply renewed her motion for a mistrial and "supplement[ed]" her motion to include this line of questioning as one of her grounds. *Id.* at 49:12–49:15; Docket 171 at 8, 10.

Pewo and Nohava both had an opportunity for recross examination at the close of Detective Christiansen's redirect, but neither defendant addressed the allegedly improper testimony. *See* Docket 190 at 55:2–59:15 (Pewo recross); Docket 190 at 59:17–66:16 (Nohava recross).

Only Pewo raises this second claim as a ground for mistrial. In her brief supporting mistrial she argues that Detective Christiansen's answer about "distributable amounts of methamphetamine" was improper because "[e]xperts cannot opine on the ultimate issue[.]" Docket 171 at 6, 8. The government's response is that "Pewo's attorney did not object at the time of the testimony[.]" Docket 184 at 7.

The court finds that Pewo forfeited her objection to the allegedly improper ultimate issue testimony because during the trial she did not object to the testimony. Pewo, through counsel, simply renewed her motion for mistrial during a sidebar and asked to supplement her motion with the testimony she "was going to object" to. Docket 190 at 49:9–49:15. Because Pewo did not object to the challenged testimony at the earliest possible opportunity, she forfeited any claim to improper ultimate issue testimony during Detective Christiansen's expert witness testimony.

## II. The testimony was not improper and does not warrant a mistrial

The failure to object does not automatically prohibit the trial court from granting a mistrial. Even though the court finds the defendants waived their objections, it retains authority to independently determine whether the challenged testimony was improper. *See Oldrock*, 867 F.3d at 941 ("The district court has broad discretion to grant or deny a motion for mistrial because it is in a far better position to weigh the effect of improper testimony[.]"). If the court decides the testimony was improper, it must then consider whether it "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *United States v. Atkins*, 881 F.3d 621, 626 (8th Cir. 2018) (citation omitted); *see United States v. Bear Runner*, 12-CR-50166-01-KES, 2013 WL 3824405, at *1 (D.S.D. July 23, 2013), *aff'd sub nom. United States v. Runner*, 589 F. App'x 814 (8th Cir. 2015) ("The first question is whether the . . . conduct or remarks were improper. If the court [answers yes], then the second

question is whether the misconduct so affected [defendants'] substantial rights that [they] [were] deprived of a fair trial.")

After reviewing the testimony at issue, the court does not find that any of Detective Christiansen's challenged testimony was improper. Thus, the testimony did not result in prejudice sufficient to deprive the defendants of a fair trial.

**A. Vouching**

Improper vouching occurs "when the prosecutor: '(1) refers to facts outside the record or implies that the veracity of a witness is supported by outside facts that are unavailable to the jury; (2) implies a guarantee of truthfulness; or (3) expresses a personal opinion about the credibility of a witness.' " *United States v. Coutentos*, 651 F.3d 809, 821 (8th Cir. 2011) (quoting *United States v. McClellon*, 578 F.3d 846, 858 (8th Cir.2009)). Normally, "prosecutorial misconduct occurs when the prosecutor herself attempts to bolster or express a personal opinion about the credibility of a witness, implies that certain evidence is truthful, or refers to evidence that is unavailable to the jury." *Bear Runner*, 2013 WL 3824405, at *3. But "[a]n improper question by government counsel may constitute prosecutorial misconduct[]" when that question elicits impermissible vouching testimony from a witness. *United States v. Guerra*, 113 F.3d 809, 815 (8th Cir. 1997).

An important exception to this rule is that "the government may explain why the jury might find the government's witnesses credible." *Bass v. United States*, 655 F.3d 758, 761 (8th Cir. 2011). This includes eliciting testimony

regarding cooperating witnesses' "motivations for testifying" as well as "the safeguards to ensure the witnesses did not lie to obtain reduced sentences." *Id.*; *see United States v. Roundtree*, 534 F.3d 876, 881 (8th Cir. 2008) (finding no improper vouching for the credibility of other witnesses when the prosecutor talked about the "safeguards" in place to "try and ensure" witnesses do not lie). Indeed, "[e]vidence of the existence, the terms, and the witness's understanding of a plea or witness immunity agreement is not vouching." *Roundtree*, 534 F.3d at 880 (quoting *United States v. Beasley*, 102 F.3d 1440, 1450 (8th Cir. 1996)). Questioning that reaffirms cooperating witnesses are required "[j]ust to tell the truth[]" is not improper vouching. *United States v. Santana*, 150 F.3d 860, 863 (8th Cir. 1998).

The court finds that the challenged line of questioning during Detective Christiansen's fact testimony was not improper vouching.[2] Both Pewo and Nohava argue that Detective Christiansen used language in front of the jury regarding proffers that "proved that the [cooperating] witnesses['] testimony was truthful and honest." Docket 171 at 8. Both defendants focus on Detective Christiansen's following statements: "[a]s part of that proffer agreement, they're to tell us the truth about crimes," Docket 190 at 14:17–14:18, "our job as investigators is . . . to kind of figure out if they're telling us the truth or not," *id.* at 15:4–15:6, and by the time a proffer is made, "you're going to know right out of the gate, I guess, if some of that is not truthful[,]" *id.* at 15:14–15:15. These

[2] The relevant testimony is reproduced in Section I.A.

replies were given in response to the government's question about "what is your understanding -- we won't talk specifically about content from a proffer in this case, but what was your understanding of how that proffer -- the guardrails or the rules –" work. *Id.* at 14:8–14:11.

This line of questioning falls within the exception recognized in *Bass* for explaining "safeguards to ensure the witnesses did not lie to obtain reduced sentences." 655 F.3d at 761. At no point did Detective Christiansen offer a personal opinion about the truthfulness of any witness or of a specific proffer in the case. As the government points out, "[Detective Christiansen] testified about the investigative steps that he took throughout his involvement in the case. He testified that proffers are one of those steps and explained what the guardrails are on a proffer, namely that a defendant has to tell the truth." Docket 184 at 9. Testimony, such as the challenged testimony here, that reaffirms cooperating witnesses are required "[j]ust to tell the truth[]" is not improper vouching. *Santana*, 150 F.3d at 863.

The second instance of allegedly improper vouching took place slightly later during Detective Christiansen's fact testimony when he was asked by the government "you talked about phones being associated or reviewed. How do you go about reviewing phones in a case?" Docket 190 at 16:6–16:7. Under direct examination, Detective Christiansen explained

> [s]o probably the most valuable information we're going to get out of these phones is going to be their text message content with other individuals. It can -- whenever I interview somebody, if they're being very cooperative from the beginning, I always -- and their cell phone is there, I always ask them if we can look through

> that phone together while we talk. And the reason I want to -- and I explain it to them -- is that cell phone is a snapshot of the truth from the past. They're telling me stories about things. That cell phone will likely verify if those stories are true.

*Id.* at 17:2–17:11.

In her brief supporting her motion for mistrial, Pewo points to this response as improper vouching "for the credibility of the co-conspirator witnesses." Docket 171 at 5. Nohava likewise claims Detective Christiansen "verified, based upon his unique, ombudsman-like knowledge . . . [that] he knew that the witnesses testifying against the defendants in this case were truthful, and ought to be believed by the jury." Docket 173 at 2.

This line of questioning is not improper because it was not focused on the truthfulness of the actual testifying witnesses in this trial, but rather on how a law enforcement officer "corroborate[s] statements[.]" Docket 184 at 10. This is one of the safeguards that "further the investigation[]" and offers a "snapshot of" the details of a drug transaction. Docket 190 at 17:1, 17:16. Looking at the totality of Detective Christiansen's testimony, he explained that looking at text messages helps an investigator verify "different drug deals that took place; different weights that were bought and sold; prices that were being charged for those; you know, the times these deals were taking place, locations sometimes." *Id.* at 17:17–17:20. But Detective Christiansen never offered to the jury his opinion on whether the phones he examined in this case corroborated whether the witnesses he interviewed in this case told him the truth. Thus, the testimony was not improper because Detective Christiansen did not testify that

his review of the co-conspirators' text messages in this case "led him to believe or disbelieve any specific witness." Docket 184 at 10.

**B. Opining on the Ultimate Issue**

Under the Federal Rules of Evidence, "[t]he basic approach to opinions, lay and expert, in these rules is to admit them when helpful to the trier of fact." Fed. R. Evid. 704 advisory committee's note to 1972 proposed rules. Rule 704(b) provides that "[i]n a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone." Fed. R. Evid. 704(b). The advisory committee notes go on to explain that when Rule 704 was adopted, it "specifically abolished" what had previously been referred to as the "ultimate issue" prohibition. Fed. R. Evid. 704 advisory committee's note to 1972 proposed rules. That older "stricture[] against allowing witnesses to express opinions upon ultimate issues" had proved to be "unduly restrictive, difficult of application, and generally served only to deprive the trier of fact of useful information." *Id.* Thus, the current rule only prohibits expert opinions embracing the "mental state or condition that constitutes an element of the crime charged[.]" Fed. R. Evid. 704(b).

The court finds that the challenged language during Detective Christiansen's expert testimony was not an improper opinion embracing the ultimate issue.[3] Detective Christiansen was asked by the government "what he

[3] The relevant testimony is reproduced in Section I.B.

could tell about the [drug] quantities involved in the [text] messages between [a co-conspirator] and Pewo, based on his experience[.]" Docket 184 at 18; Docket 190 at 43:14–43:19. Detective Christiansen replied that "a little over 40 ounces"[4] had been exchanged. Docket 190 at 43:23. He went on to explain "that's, you know, without a doubt, distributable amounts of methamphetamine there." *Id.* at 43:24–43:25.

Pewo argues that it was "clearly improper[]" for Detective Christiansen to use this language. Docket 171 at 6. Relying on Federal Rule of Evidence 704(b), she contends that "in this case, [that ultimate issue is] whether Ms. Pewo was involved in a conspiracy to distribute 500 grams or more methamphetamine." *Id.* at 8. Pewo equates Detective Christiansen's "distributable amounts of methamphetamine" language to "[telling] the jury Ms. Pewo was guilty of distribution of 500 grams or more of methamphetamine[.]" *Id.* at 10. She claims this language "decide[d] [Pewo's] intentions and a crucial element of the charge against her." *Id.* In its response, the government counters that "Detective Christiansen did not testify about Pewo's state of mind or any ultimate issue of the case." Docket 184 at 18.

The court holds that the testimony was not improper because Detective Christiansen did not testify that the quantities in the text messages were evidence that Pewo had an intent to distribute methamphetamine. "[N]or did he say that it was indicative of her voluntarily or intentionally joining in the

---

[4] Forty (40) ounces converts to 2.5 pounds.

conspiracy while knowing its purpose[.]" *Id.* at 19. These are the required mental states for the charged crimes, and these are the prohibited subjects of expert opinions under Rule 704. Rather, in response to a question referring to the quantities of methamphetamine discussed in text messages, Detective Christiansen described those quantities as "distributable." *Id.*; Docket 190 at 43:25. The use of this adjective properly falls within Detective Christiansen's narcotics experience and training and does not embrace Pewo's intent or knowledge. Indeed, his response fully aligns with Rule 704's directive to the court "to admit [opinions] when helpful to the trier of fact." Fed. R. Evid. 704 advisory committee's note to 1972 proposed rules.

Thus, the expert testimony was not improper because Detective Christiansen did not testify about Pewo's mental state or condition.

**CONCLUSION**

Defendants did not timely object to the challenged testimony and thus waived any objection to it. But even if the issue was not waived, Detective Christiansen did not engage in improper vouching. The government's witness, Detective Christiansen, did not engage in any improper conduct during either his fact or expert testimony. Thus, the testimony did not result in prejudice sufficient to deprive the defendants of a fair trial. Under the facts of this case a mistrial is not warranted, the jury's verdict will stand, and defendants' motions for a mistrial are denied.

Thus, it is

ORDERED that defendants' motions for mistrial (Docket 170; Docket 172) are denied.

Dated October 27, 2026.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE